569 S.E.2d 189

**STATE of West Virginia, Plaintiff Below, Appellee,**

v.

**Roy Eddie SLATON, Jr., Defendant Below, Appellant.**

**No. 30019.**

Supreme Court of Appeals of West Virginia.

Submitted Feb. 27, 2002.

Decided July 2, 2002.

Concurring Opinion of Justice Starcher July 23, 2002.

---

Kevin D. Mills, Esq., Martinsburg, for Appellant.

Pamela Jean Games–Neely, Esq., Prosecuting Attorney, Christopher C. Quasebarth, Esq., Assistant Prosecuting Attorney, Martinsburg, for Appellee.

PER CURIAM.

This case is before this Court upon appeal of a final order of the Circuit Court of Berkeley County entered on January 5, 2001. In that order, the circuit court denied motions for a competency hearing and a new trial filed by the appellant and defendant below, Roy Eddie Slaton, Jr., and sentenced him to an indeterminate term of not less than 15 nor more than 35 years in the state penitentiary for his conviction of first-degree sexual assault. In this appeal, the appellant contends that the circuit court erred by not conducting a competency hearing prior to trial and before sentencing. The appellant also contends that the circuit court erred by allowing the jury to hear testimony suggesting that he sexually assaulted the victim on more than one occasion. Finally, the appellant asserts that the circuit court erred by not ordering a competency evaluation of the five-year-old victim before allowing him to testify.

This Court has before it the petition for appeal, the entire record, and the briefs and argument of counsel. For the reasons set

forth below, the final order of the circuit court is affirmed.

## I. FACTS

The appellant was arrested on May 25, 1999, and charged with sexual abuse in the first degree of J.B.,[1] a five-year-old child. The sexual abuse allegedly occurred at the appellant's home where he was living with his mother and sister. The appellant's sister was J.B.'s babysitter. The allegations were reported to the police by J.B.'s mother.

Following the appellant's arrest, a preliminary hearing was held and probable cause was found to bind the appellant's case over to the October 1999 term of the grand jury. Meanwhile, the appellant's trial counsel had the appellant evaluated by Harold Slaughter, a licensed psychologist. Mr. Slaughter found that the appellant was competent to stand trial and criminally responsible for his actions. However, he questioned the appellant's ability to assist trial counsel in his defense. Mr. Slaughter noted that the appellant has an I.Q. of 62 and a limited education. Despite this report, the appellant's trial counsel did not request a competency hearing.

In October 1999, the appellant was indicted by a Berkeley County grand jury and charged with first-degree sexual assault and sexual abuse by a custodian. The latter charge was subsequently dismissed. Prior to trial, the appellant filed a motion requesting an independent psychological or psychiatric examination to determine J.B.'s competency to testify at trial. The circuit court denied the motion noting that J.B. was able to distinguish between the truth and a lie.

The appellant's trial began on March 1, 2000, and J.B. testified on behalf of the

State. On March 3, 2000, the jury returned a verdict finding the appellant guilty of first-degree sexual assault. Subsequently, the appellant filed motions for judgment of acquittal and a new trial. In November 2000, the appellant retained new counsel and filed a supplemental motion for a new trial. The appellant argued that the circuit court had erred by not conducting a competency hearing pursuant to W.Va.Code § 27–6A–1(a) (1983) prior to trial.

On December 1, 2000, the circuit court held a hearing on the appellant's motions and heard testimony from three psychologists, including the psychologist from Huttonsville who had evaluated the appellant for sentencing purposes at the direction of the court. The hearing was continued until December 20, 2000 because of time restraints. In the meantime, the appellant filed a motion for a competency hearing prior to sentencing. On December 20, 2000, the circuit court heard further evidence and then denied the appellant's motions for a new trial and a competency hearing. Thereafter, the court sentenced the appellant to a minimum of 15 years but not more than 35 years in the state penitentiary. The final order was entered on January 5, 2001. This appeal followed.

## II. DISCUSSION

### A. Competency of the Appellant

The appellant first contends that the circuit court erred by failing to conduct a pretrial competency hearing pursuant to W.Va. Code § 27–6A–1(a).[2] Although his trial counsel failed to make a motion for a competency hearing, the appellant contends that the circuit court was obligated to order a hearing *sua sponte* because it was aware of the fact that his mental capacity had been

---

1. As in prior cases involving sensitive matters, we use the initials rather than the full name of the victim. *In the Matter of Jonathan P.*, 182 W.Va. 302, 303 n. 1, 387 S.E.2d 537, 538 n. 1 (1989).

2. W.Va.Code § 27–6A–1(a) provides, in pertinent part:

Whenever a court of record, or in the instance of a defendant charged with public intoxication a magistrate or other judicial officer, believes that a defendant in a felony case or a defendant in a misdemeanor case in which an

indictment has been returned, or a warrant or summons issued, may be incompetent to stand trial or is not criminally responsible by reason of mental illness, mental retardation or addiction, it may at any stage of the proceedings after the return of an indictment or the issuance of a warrant or summons against the defendant, order an examination of such defendant to be conducted by one or more psychiatrists, or a psychiatrist and a psychologist[.]

called into question. The circuit court had reviewed Mr. Slaughter's report and even noted during the hearing on February 28, 2000 that there were concerns about the appellant's mental capacity.

This Court has long since recognized that "[a]n accused person, although he may have been sane at the time of the acts charged, cannot be tried, sentenced or punished while mentally incapacitated." Syllabus Point 1, *State v. Arnold,* 159 W.Va. 158, 219 S.E.2d 922 (1975), *overruled on other grounds by State v. Demastus,* 165 W.Va. 572, 270 S.E.2d 649 (1980). In fact, " '[i]t is a fundamental guaranty of due process that a defendant cannot be tried or convicted for a crime while he or she is mentally incompetent.' *State v. Cheshire,* 170 W.Va. 217, 219, 292 S.E.2d 628, 630 (1982)." Syllabus Point 5, *State v. Hatfield,* 186 W.Va. 507, 413 S.E.2d 162 (1991). Moreover,

> "No person may be subjected to trial on a criminal charge when, by virtue of mental incapacity, the person is unable to consult with his attorney and to assist in the preparation of his defense with a reasonable degree of rational understanding of the nature and object of the proceedings against him." Syllabus Point 1, *State v. Milam,* 159 W.Va. 691, 226 S.E.2d 433 (1976).

Syllabus Point 6, *State v. Barrow,* 178 W.Va. 406, 359 S.E.2d 844 (1987). Accordingly, this Court has stated that "a trial court has an affirmative duty to employ adequate procedures for determining competency once the issue has come to the attention of the court, whether through formal motion by one of the parties or as a result of information that becomes available in the course of criminal proceedings." *State v. Sanders,* 209 W.Va. 367, 377, 549 S.E.2d 40, 50 (2001). Furthermore, this Court has held that "[w]hen a trial judge is made aware of a possible problem with defendant's competency, it is abuse of discretion to deny a motion for psychiatric evaluation." Syllabus Point 4, in part, *State v. Demastus,* 165 W.Va. 572, 270 S.E.2d 649 (1980).

As noted above, the circuit court reviewed Mr. Slaughter's report. Mr. Slaughter concluded:

> [I]t is my opinion that Mr. Slaton would be considered competent to stand trial. I believe he has a rudimentary functional understanding of the judicial process and the charges and penalty he faces. However, I must concur with others that his explanation of the events leaves much to be desired and thus brings into question his ability to assist his counsel in his own defense.[3]

> Regarding criminal responsibility, I find no evidence to indicate that he was suffering from a mental disease or defect at the time of the alleged offense that would have significantly impaired his ability to conform his behavior to the requirements of the law. He is very aware of right versus wrong and although he is mildly retarded there is no history available that would indicate a propensity toward unlawful behavior. Nor is there any indication that he would unknowingly engage in unlawful acts. Therefore, it is my opinion that Mr. Slaton should be considered criminally responsible for his behavior.

In addition, the circuit court specifically questioned the appellant's attorney to determine if there were credible concerns about the appellant's competency. The appellant's counsel responded that "no, that is not going to be an issue."

In *State v. Moore,* 193 W.Va. 642, 457 S.E.2d 801 (1995), this Court found that a trial court could rely upon the conclusions of a psychological examination and the representations of defense counsel in determining whether a competency hearing was required. Moore asserted that the trial court had erred by ordering a competency evaluation to be conducted by a psychologist instead of a psychiatrist as mandated by W.Va.Code § 27–6A–1. The record showed that when the trial court initially ordered the psychological exam, the prosecution noted that the statute required a psychiatric, not a psychological, exam. The trial court concluded that the

---

**3.** The appellant told Mr. Slaughter that he and the victim went to a building in the backyard to retrieve dog food and that he accidentally touched the victim when he tripped and fell on the victim causing the victim's pants to fall down.

statute was discretionary in this regard, and the defense expressly stated that it had no objection to the court's decision. The psychologist's report concluded that Moore was competent to stand trial. In a subsequent proceeding, the issue of a formal competency hearing was discussed and Moore's attorney repeatedly indicated that a hearing was not necessary.

On appeal, this Court concluded in *Moore* that the trial court reasonably relied upon the psychological report[4] and defense counsel's representations that a competency hearing was not necessary. We explained that "[w]e do not find it to be reversible error when the defense counsel repeatedly turns down opportunities to request a psychiatrist and waives his client's right to a full competency hearing." *Moore*, 193 W.Va. at 646, 457 S.E.2d at 805.

■ After thoroughly reviewing the record in the case *sub judice*, we find that the circuit court reasonably relied upon the psychological report prepared by Mr. Slaughter and the assertions of appellant's trial counsel that the appellant's competency was not an issue in this case. It is evident that the circuit court would have ordered a psychiatric evaluation and held a competency hearing had the appellant's competency been questioned. However, appellant's counsel assured the court that the appellant's competency was not a concern. Thus, we do not find that the circuit court abused its discre-

tion by failing to order a competency evaluation of the appellant and not conducting a competency hearing prior to trial.[5]

■ The appellant next contends the circuit court erred by failing to order an evaluation of the appellant pursuant to W.Va.Code § 27–6A–1(e) prior to sentencing.[6] The appellant claims that although the circuit court ordered an evaluation of his mental and psychological conditions for sentencing purposes, he was only sent to Huttonsville for diagnosis and classification. The appellant claims that the evaluation he received at Huttonsville is not what is envisioned by W.Va.Code § 27–6A–1(e).

Our review of the record reveals that prior to sentencing, the circuit court remanded the appellant to the custody of the West Virginia Division of Corrections for transportation to Huttonsville or Mount Olive for a diagnostic evaluation as contemplated by W.Va.Code § 62–12–7a (1994).[7] Although the court did express concern about the appellant's level of mental functioning, it did not order a psychiatric examination pursuant to W.Va.Code § 27–6A–1(e). Thus, we cannot find that the appellant's pre-sentencing evaluation was inadequate. Moreover, our review of the record reveals that the circuit court considered whether the appellant was competent prior to sentencing. The evaluating psychologist from Huttonsville testified at the sentencing hearing as well as two psychologists who evaluated the appellant following his convic-

4. However, this Court did advise trial courts that in the future, competency evaluations should be ordered to be performed by " 'one or more psychiatrists or a psychologist *and* a psychiatrist,' in accordance with *W.Va.Code*, 27–6A–1." Syllabus Point 2, *Moore*.

5. In his brief, the appellant makes a separate argument in which he contends that the circuit court should have granted him a new trial once he raised the issue of the court's failure to order a pre-trial evaluation and competency hearing in post-trial motions. Having found that the circuit court did not abuse its discretion by not conducting a pre-trial competency evaluation and hearing based on the psychological report and the representations of appellant's trial counsel, we find this assignment of error to be without merit.

6. W.Va.Code § 27–6A–1(e) provides:
After a conviction and prior to sentencing, the court of record may order a psychiatric or

other clinical examination and, after such examination, may further order a period of observation in a mental health facility designated by the director of health. Such a period of observation or examination shall not exceed forty days.

7. W.Va.Code § 62–12–7a provides, in pertinent part:

Notwithstanding any other provision of law, when any person has been found guilty of, or pleads guilty to, a felony, or any offense described in article eight-d [§§ 61–8D–1 et seq.] or eight-b [§§ 61–8B–1 et seq.], chapter sixty-one of this code, against a minor child, the court may, prior to pronouncing of sentence, direct that the person be delivered into the custody of the commissioner of corrections, for the purpose of diagnosis and classification for a period not to exceed sixty days[.]

tion. In sum, we cannot find that the circuit court abused its discretion by failing to order an evaluation of the appellant pursuant to W.Va.Code § 27–6A–1(e) prior to sentencing.

### B. Rule 404(b) Evidence

■ The appellant further contends that the circuit court erred by allowing the State to present evidence indicating that the appellant had sexually assaulted the victim on more than one occasion. The appellant asserts that this evidence was inadmissible pursuant to Rule 404(b) of the West Virginia Rules of Evidence.[8] This Court has held that " '[t]he action of a trial court in admitting or excluding evidence in the exercise of its discretion will not be disturbed by the appellate court unless it appears that such action amounts to an abuse of discretion.' Syllabus point 6, *State v. Kopa*, 173 W.Va. 43, 311 S.E.2d 412 (1983)." Syllabus Point 1, *State v. Nichols*, 208 W.Va. 432, 541 S.E.2d 310 (1999).

At trial, the victim testified that, "Sometimes we go in the building and lots of time we go outside and we don't see anyone. We make sure no one is watching." The child's mother and the child's psychologist gave similar testimony indicating that the appellant had sexually assaulted the victim on more than one occasion.[9] Prior to trial, the appellant made a motion requesting the court to instruct the State's witnesses to limit their testimony to one single instance of sexual assault as alleged in the indictment. The circuit court denied the motion agreeing with the State that the several instances of sexual assault were so close in time and considered by the victim to be one incident that such evidence was "intrinsic" to the indicted charge. The court further noted that the appellant was aware of the fact that there were allegations of multiple incidents even though the State had indicted the appellant on only one count of sexual assault. The court also considered the difficulty in instructing a five-year-old child to talk about one specific incident.

■ After considering the testimony at issue, we agree with the circuit court that the evidence was "intrinsic" to the indicted charge and, therefore, not governed by Rule 404(b). This Court has explained that:

In determining whether the admissibility of evidence of "other bad acts" is governed by Rule 404(b), we first must determine if the evidence is "intrinsic" or "extrinsic." *See United States v. Williams*, 900 F.2d 823, 825 (5th Cir.1990): " 'Other act' evidence is 'intrinsic' when the evidence of the other act and the evidence of the crime charged are 'inextricably intertwined' or both acts are part of a 'single criminal episode' or the other acts were 'necessary preliminaries' to the crime charged." (Citations omitted). If the proffer fits in to the "intrinsic" category, evidence of other crimes should not be suppressed when those facts come in as *res gestae*—as part and parcel of the proof charged in the indictment. *See United States v. Masters*, 622 F.2d 83, 86 (4th Cir.1980) (stating evidence is admissible when it provides the context of the crime, "is necessary to a 'full presentation' of the case, or is ... appropriate in order 'to complete the story of the crime on trial by proving its immediate context or the "res gestae" ' "). (Citations omitted).

*State v. LaRock*, 196 W.Va. 294, 312 n. 29, 470 S.E.2d 613, 631 n. 29 (1996). Given the facts and circumstances of this case, it is clear that the multiple incidents of sexual assault were "inextricably intertwined."

8. Rule 404(b) of the West Virginia Rules of Evidence states:

*Other crimes, wrongs, or acts.*—Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he or she acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, provided that upon request by the accused, the prosecution in a criminal case shall provide reasonable notice in advance of trial, or during trial if the court excuses pretrial notice on good cause shown, of the general nature of any such evidence it intends to introduce at trial.

9. J.B.'s mother testified that, "As we were heading towards Winchester [J.B.] looked over at his cousin ... and said, 'Eddie sucked it again.' " J.B.'s psychologist testified that, "He [J.B.] said it happened a whole lot of times. That is a direct quote which I wrote down as I was meeting with him."

J.B.'s testimony regarding purported other acts by the appellant was part of a single criminal episode, and thus, was admissible. Therefore, we do not find that the trial court abused its discretion by admitting this evidence. Furthermore, the record shows that the trial court did instruct the jury to disregard the psychologist's testimony that J.B. told him that "it happened lots of times." "Ordinarily where objections to questions or evidence by a party are sustained by the trial court during the trial and the jury instructed not to consider such matter, it will not constitute reversible error." Syllabus Point 18, *State v. Hamric,* 151 W.Va. 1, 151 S.E.2d 252 (1966).

### C. Denial of Independent Psychological Evaluation of the Victim

■ Finally, the appellant argues that the circuit court erred by permitting J.B. to testify without an evaluation of his competency by an independent psychologist or psychiatrist. We begin our analysis of this issue by noting that pursuant to Rule 601 of the West Virginia Rules of Evidence, "[e]very person is competent to be a witness except as otherwise provided for by statute or these rules." As this Court observed in Syllabus Point 1 of *State v. Stacy,* 179 W.Va. 686, 371 S.E.2d 614 (1988):

> At common law, trial courts assessed the admissibility of infant testimony in terms of the child's competence to testify, leaving juries to determine the credibility of the witness. In reality, with child witnesses the distinction between competency and credibility is blurred. With the adoption of *W.Va. Rules of Evidence* 601, which tracks its federal counterpart, the analysis of competency is replaced by a balancing of the probative value of the testimony against any unfair prejudice resulting from it under *W.Va. Rules of Evidence* 403. While the adoption of the *W.Va. Rules of Evidence* has changed the terminology of the analysis, the underlying problems of child witness testimony in sexual abuse cases remain substantially unchanged.

We further explained,

> In sexual abuse cases, it can be highly inflammatory for a jury to hear an infant

speak of sexual abuse by a defendant. What juror will not tend automatically to believe a five-year-old when she says she was sexually abused? Yet to exclude the victim's testimony because of its prejudicial effect would make the prosecution of such cases nearly impossible because the victim's testimony is usually the mainstay of the state's evidence.

*Stacy,* 179 W.Va. at 689, 371 S.E.2d at 617. We concluded in *Stacy* that when the balance of probative value versus prejudice of a child's testimony is a close question, the better course for the court is to order an evaluation in accordance with our decision in *Burdette v. Lobban,* 174 W.Va. 120, 323 S.E.2d 601 (1984). In Syllabus Point 2 of *Burdette,* this Court held that: "When a child's capacity to testify that she was the victim of a sexual abuse or neglect is present, the court should appoint a neutral child psychologist or psychiatrist to conduct a transcribed or otherwise recorded interview." However, we also stated in *Stacy* that, "[t]he requirement for this interview by a psychiatrist or psychologist under *Burdette* is not mandatory, but rather subject to the sound discretion of the trial judge and the facts of the case." 179 W.Va. at 688, 371 S.E.2d at 616.

■ In *State v. Delaney,* 187 W.Va. 212, 417 S.E.2d 903 (1992), this Court adopted a balancing test to determine whether to grant a party's request for an additional physical or psychological examination. We held in Syllabus Point 3 of *Delaney* that:

> In order for a trial court to determine whether to grant a party's request for additional physical or psychological examinations, the requesting party must present the judge with evidence that he has a compelling need or reason for the additional examinations. In making the determination, the judge should consider: (1) the nature of the examination requested and the intrusiveness inherent in that examination; (2) the victim's age; (3) the resulting physical and/or emotional effects of the examination on the victim; (4) the probative value of the examination to the issue before the court; (5) the remoteness in time of the examination to the alleged

criminal act; and (6) the evidence already available for the defendant's use.

In this case, the trial court conducted an *in camera* hearing prior to trial to determine J.B.'s capacity to testify. After reviewing the records of the child's treating psychologist and hearing the child's testimony, the trial court determined that J.B. could testify and that no further psychological examination was warranted. The trial court noted that J.B. was "able to distinguish between the truth and a lie" and answered questions in a "straight, forthright manner."

Having reviewed the record, we do not find that the appellant presented any evidence to the circuit court establishing a compelling need or reason for additional psychological examination as required by *Delaney*. In fact, it appears that the appellant merely asked for the evaluation. Thus, we cannot find that the circuit court erred by denying the appellant's request for an independent psychological examination of J.B.[10]

### III. CONCLUSION

Accordingly, for the reasons set forth above, the final order of the Circuit Court of Berkeley County entered on January 5, 2001 is affirmed.

Affirmed.

STARCHER, Justice, concurring.

(Filed July 23, 2002)

In the instant case, the evidence of the defendant's guilt was strong, and there was evidence that the defendant was competent to stand trial. In fact, the defendant's counsel assured the Court that the defendant's competency was not an issue. Nevertheless, as the Court's opinion cites, under *State v. Sanders*, 209 W.Va. 367, 377, 549 S.E.2d 40, 50 (2001), the trial court should have *on its own motion* ordered a competency examination, if the court thought, the defendant's competency could be reasonably questioned. Perhaps a competency examination would have been appropriate in this case.

The problem with requiring trial courts to do things *sua sponte*, of course, is that it is hard for the judge to remember and keep track of such duties, especially in the middle of trial. In the instant case, if there were substantial evidence of the defendant's incompetence, regardless of what his counsel said, we would consider whether the trial court's failure to order a competency exam *sua sponte* was reversible error. Because there was insufficient evidence in this case, any error by the trial court was harmless. Accordingly, I concur.

---

**10.** The appellant asserts additional assignments of error and argues that the cumulative effect of these errors warrants a new trial. We have thoroughly considered these assignments of error and find them to be without merit.