# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**State of West Virginia,**
**Plaintiff Below, Respondent**

**FILED**

**June 24, 2013**
**RORY L. PERRY II, CLERK**
**SUPREME COURT OF APPEALS**
**OF WEST VIRGINIA**

**vs)  No. 12-0272** (Mercer County 10-F-91)

**Mark Lynn J.,**
**Defendant Below, Petitioner**

## MEMORANDUM DECISION

Petitioner Mark Lynn J.,[1] by counsel John Earl Williams Jr., and Robert E. Holroyd, appeals the sentencing order of the Circuit Court of Mercer County entered January 23, 2012. Following a jury trial, petitioner was convicted of two counts of purchasing a child, three counts of sexual abuse in the first degree, four counts of sexual abuse by a custodian, and one count of sexual assault in the first degree. The State, by counsel, the Office of the Attorney General, filed a response.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision is appropriate under Rule 21 of the Rules of Appellate Procedure.

In December of 2006, petitioner offered $15,000 to $20,000 to purchase custody of his granddaughters, 4-year old A.A. and 2-year old K.J. (his son, Kirby's children) directly from his daughter-in-law, Sylvia. The victim in the remaining counts of abuse and assault was a third child, petitioner's step-granddaughter, A.P. (his son, Kevin's step-child).

The State informed the trial court and petitioner that it wished to offer evidence of inappropriate touching of A.P.'s sister, C.R., and additional evidence from A.P. to establish that petitioner had illicit purposes in attempting to purchase A.A. and K.J. The trial court conducted a Rule 404(b) hearing and ruled that this evidence would be permitted to show petitioner's lustful disposition toward children and the absence of mistake.

At trial, the jury heard the testimony of petitioner's daughter-in-law Sylvia regarding petitioner's attempt to purchase her children, A.A. and K.J. The jury also heard the testimony of

---

[1]In view of the sensitive nature of this case, this Court will refer to certain individuals by their initials or first name and last initial. *Clifford K. v. Paul S.*, 217 W.Va. 625, 630 n.1, 619 S.E.2d 138, 143 n.1 (2005).

petitioner's granddaughters, C.R. and A.P. The State called Phyllis Hasty, a licensed social worker specializing in children's counseling and play therapy. Ms. Hasty testified regarding the treatment she provided A.P. and C.R., and what the children reported. The trial court gave the jury a Rule 404(b) limiting instruction regarding the testimony concerning petitioner's conduct toward C.R.

Petitioner was found guilty of two counts of purchasing a child, three counts of sexual abuse in the first degree, four counts of sexual abuse by a custodian, and one count of sexual assault in the first degree. He received an effective sentence of fifteen to forty-five years in the penitentiary.[2]

Asking for a new trial, petitioner raises several assignments of error. Petitioner's first assignment of error addresses his most significant issue, namely, that the trial court erred by allowing C.R. to testify as a Rule 404(b) witness, when she was not named as a victim in the indictment.

We begin by recognizing that the West Virginia Rules of Evidence allocate significant discretion to the trial court in making evidentiary rulings. Syl. Pt. 1, *State v. Cyrus*, 222 W.Va. 214, 664 S.E.2d 99 (2008). On appeal, this Court applies a three-fold standard of review for Rule 404(b) determinations by a trial court:

> The standard of review for a trial court's admission of evidence pursuant to Rule 404(b) involves a three-step analysis. First, we review for clear error the trial court's factual determination that there is sufficient evidence to show the other acts occurred. Second, we review *de novo* whether the trial court correctly found the evidence was admissible for a legitimate purpose. Third, we review for an abuse of discretion the trial court's conclusion that the "other acts" evidence is more probative than prejudicial under Rule 403. *See State v. Dillon*, 191 W.Va. 648, 661, 447 S.E.2d 583, 596 (1994); *TXO Production Corp. v. Alliance Resources Corp.*, 187 W.Va. 457, 419 S.E.2d 870 (1992), *aff'd*, 509 U.S. 443, 113 S.Ct. 2711, 125 L.Ed.2d 366 (1993); *State v. Dolin*, 176 W.Va. 688, 347 S.E.2d 208 (1986).

*State v. LaRock*, 196 W.Va. 294, 310-11, 470 S.E.2d 613, 629-30 (1996). Furthermore, this Court reviews the admission of Rule 404(b) evidence in the light most favorable to the party offering the evidence, in this case the State, maximizing its probative value and minimizing its prejudicial effect. *State v. McGinnis*, 193 W.Va. 147, 159, 455 S.E.2d 516, 528 (1994).

---

[2]The trial court sentenced petitioner to serve one to five years for each of the counts of purchasing a child, one to five years for each count of sexual abuse, ten to twenty years for each count of sexual abuse by a custodian, and twenty-five to one hundred years for the count of sexual assault, with sentences to run consecutively. The trial court ordered the sentences for the three counts of sexual abuse by a custodian and the sexual assault count suspended, pending a five-year period of probation upon discharge of the remaining counts.

In this case, the State offered the evidence of petitioner's sexual advances on C.R. to show petitioner's lustful disposition toward children and the absence of mistake. After conducting a hearing on the Rule 404(b) motion, the trial court found that this evidence was relevant and admissible for the limited purpose of showing petitioner's motive and intent behind his physical contact toward A.P., and the attempted purchase of A.A. and K.J. The trial court found that the probative value of the evidence was not substantially outweighed by its potential for unfair prejudice. Furthermore, the trial court gave limiting instructions to the jury immediately after the testimony, and again in the final jury charge.

We believe the trial court admitted the challenged evidence for a proper purpose and it was relevant. At trial, petitioner disavowed any criminal intent in attempting to purchase his granddaughters and stated he made the offer to give them a better life. The State sought to demonstrate petitioner's motive and the absence of mistake by showing petitioner's prior acts of sexual advances toward C.R. In addition to the clear and unambiguous language of Rule 404(b), our previous cases recognize the probative value of uncharged acts to demonstrate "intent" and "absence of mistake or accident." *See State v. LaRock,* 196 W.Va. 294, 310, 470 S.E.2d 613, 629 (1996)(evidence of defendant's acts of continued violence against his defenseless son to prove intent). After careful review, this Court finds that the trial court did not abuse its discretion by ruling the evidence was admissible.

Petitioner's second assignment of error is that the trial court erred by admitting the testimony of the play therapist, Ms. Hasty, to present her opinion when her testimony was originally limited to that of only a historian for soliciting a child statement as a statement made for the purpose of medical diagnosis or treatment as an exception to the hearsay rule under West Virginia Rules of Evidence 803(4).

We find that the trial court properly admitted the testimony of Ms. Hasty, subject to this Court's holding in Syllabus Point 9 of *State v. Pettrey*, 209 W.Va. 449, 549 S.E.2d 323 (2001), which states,

> When a social worker, counselor, or psychologist is trained in play therapy and thereafter treats a child abuse victim with play therapy, the therapist's testimony is admissible at trial under the medical diagnosis or treatment exception to the hearsay rule, West Virginia Rule of Evidence 803(4), if the declarant's motive in making the statement is consistent with the purpose of promoting treatment and the content of the statement is reasonably relied upon by the therapist for treatment. The testimony is inadmissible if the evidence was gathered strictly for investigative or forensic purposes.

Ms. Hasty provided treatment to A.P. and C.R. following a referral by a child advocacy agency after the forensic interviews were completed. After Ms. Hasty testified about what C.R. had told her, the trial court gave its Rule 404(b) limiting instruction. When Ms. Hasty was asked about her opinion about whether A.P. was "coached," drawing an objection, the trial court sustained that objection. The prosecuting attorney rephrased the question, asking specifically about Ms. Hasty's observations of A.P. When asked by the prosecuting attorney if there was "any evidence that you are aware of that [A.P.] was coached?" Ms. Hasty responded no, that

[A.P.] "had the stigma. She had the fear. She used child-like language[.]" Based upon our review of the record, this Court finds no reversible error in the admission of Ms. Hasty's testimony, and we affirm the trial court's rulings in that regard.

Finally, petitioner contends the trial court erred by allowing the State to read excessive portions of A.P.'s forensic interviews to impeach or rebut petitioner's testimony that the forensic interviewer had offered A.P. money to say that petitioner molested her.[3] The State responds that not only did petitioner invite the State to refer to the forensic interviews, the State was left with no choice because petitioner leveled a very serious and false charge during his direct examination. The State argues that it had to present the exact exchange between A.P. and the interviewer because the transcript showed that A.P. said she was receiving money for chores and good grades.

Given the fact that petitioner invited the introduction of the hearsay statement when he falsely represented that the statement showed an admission by A.P. that she made the accusations for money, this Court is of the opinion that the admission of the forensic interviews on rebuttal was within the trial court's discretion. This assignment of error is, therefore, without merit.

Having fully considered the record before us, this Court finds no reversible error.[4] For the foregoing reasons, we affirm petitioner's criminal convictions as set forth in the January 23, 2012, order of the Circuit Court of Mercer County.

---

[3]During the course of petitioner's testimony, his counsel asked him:

Q.      Do you have any idea why these charges were brought against you?
A.      [A.P.] was paid.
Q.      What?
A.      [A.P.] was paid.
Q.      How do you know that?
A.      Because I read it in the interview she had with Shiloh Woodward. . .
Q.      And what did you read there?
MS. WILLIAMSON: Objection, Your Honor. May we approach?
THE COURT:          Yep. Sure.
(WHEREUPON the following discussion was had at the bench out of the hearing of the jury)
MS. WILLIAMSON: I would like a ruling that I'm allowed on cross-examination to get into all the forensic interviews.
THE COURT: Well, it looks like you're getting into Shiloh Woodard's at least. He brought up Shiloh Woodard so you can get into Shiloh Woodward.

[4]This Court finds no merit in petitioner's contention that the prosecuting attorney's statement in closing argument, admonishing the jury to not allow petitioner to "buy his way out of this verdict," was prejudicial. Petitioner failed to show that the prosecuting attorney's limited, isolated remark was so damaging as to require reversal. *See* Syl. Pt. 6, *State v. Sugg*, 193 W.Va. 388, 456 S.E.2d 469 (1995).

Affirmed.

**ISSUED:** June 24, 2013

**CONCURRED IN BY:**

Chief Justice Brent D. Benjamin
Justice Robin Jean Davis
Justice Margaret L. Workman
Justice Menis E. Ketchum
Justice Allen H. Loughry II